**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

Carrum Technologies, LLC,

Plaintiff,

v.

BMW of North America, LLC,
BMW Manufacturing Co., LLC, and
Bayerische Motoren Werke AG

Defendants.

Case No. 1:18-cv-01645-RGA

JURY TRIAL DEMANDED

**REDACTED PUBILC VERSION**

**DEFENDANTS' RESPONSIVE LETTER TO HONORABLE RICHARD G. ANDREWS REGARDING A DISCOVERY DISPUTE**

OF COUNSEL:

Lionel M. Lavenue
Deanna C. Smiley
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP
1875 Explorer Street, Suite 800
Reston, VA 20190

Forrest A. Jones
Joseph M. Myles
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001-4413

Frederick L. Cottrell, III (#2555)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, PA
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
cottrell@rlf.com
haynes@rlf.com

*Attorneys for Defendants*

Dated: December 14, 2023

Dear Judge Andrews:

In its discovery dispute letter, Carrum requests that the Court order BMW to produce: (1) BMW source code internal citations; (2) a list associating source code [redacted] to Accused Products; (3) a list associating BMW Body Group numbers to make/model/trim; and (4) Bosch trade secret ACC source code. Carrum's first request is unripe because the parties have never reached an impasse on the request for source code internal citations, as raised for the first time on November 29, 2023 and discussed/continued in a December 11, 2023 meet-and-confer. Carrum's second and third requests are now moot, because BMW has produced or promised to provide these requested lists on December 14 and 15. Carrum's fourth request should be denied, because, as BMW has advised Carrum repeatedly, Bosch's trade secret ACC source code is not within BMW's possession, custody, or control, so BMW cannot produce something it does not have (or have access to). Notably, Carrum's request was sprung on BMW days ago, fails to follow the discovery procedures, and is improperly for tactical advantage.

**1. Carrum's Request for BMW Source Code Internal Citations Is Unripe**

First, Carrum requests that the Court order BMW to produce certain information, as referenced in comments in BMW's ACC source code files, which BMW first made available for Carrum's inspection on November 13, 2023. Of note, Carrum first raised this issue on November 29, 2023 (17 days after Carrum's expert first reviewed the code), and Carrum's request is not ripe, because the parties are not even close to an impasse on the issue. Ex. 1 at 6–7. To the contrary, BMW has diligently investigated Carrum's request and *offered to produce information*, pending a showing of relevance, which Carrum has not provided. *Id.* at 1. Nevertheless, Carrum prematurely raised this request *a single day* after BMW offered to produce documents.

On only November 29, 2023, Carrum advised that certain comments in BMW's ACC source code "appear to reference external documents or other sources by alphanumerical identifiers" and requested "all external documents or sources referenced by the source code." *Id.* at 6–7. In response, BMW was investigating, which required the inspection of [redacted] After this preliminary investigation, BMW advised of its availability for a meet-and-confer as soon as practicable, even after the close of business, on Monday, December 11, 2023, one day before Carrum filed its dispute letter. But Carrum acted prematurely. That is, Carrum raised the issue for the first time and then went to the Court the next day—December 12, 2023:



As this timeline demonstrates, with a dispute pending a single day, the parties had not conferred and reached an impasse. Instead, BMW is actively investigating Carrum's request and has offered to produce documents. Carrum cut discussions short to prematurely move the Court.

Indeed, even during the parties' December 11, 2023 meet-and-confer, BMW explained the meaning of the "alphanumerical identifiers" and the relationship to codebeamer.com URLs. Carrum requested all citations but did not identify any specifics, e.g., relevant RFPs, the relevance of these files, or any specific, relevant webpages. Instead, Carrum conceded that these reference files mentioned in the BMW source code cannot impact the functionality of any ACC system, as found in the source code executed by the system. In other words, Carrum concedes that these reference files are merely convenient—not necessary—for source code review. This District has rejected such generic and unspecific requests. *See United Access Techs., LLC v. AT&T Corp.*, C.A. No. 11-338-LPS, 2020 WL 3128269, *2 (D. Del. June 12, 2020) (denying motion to compel absent showing of relevance to the particular matter). Carrum's generic suggestions of relevance combined with its concession collectively reveal that it merely seeks an excuse to extend the Court's source code review deadline, based on its late request for the internal citations. *See* D.I. 172 at 3. Nevertheless, BMW is currently collecting documents to review for production.

**2 and 3. Requests for BMW Service Packs and Body Group Codes Are Moot**

Carrum requests the Court order BMW to produce lists associating source code [redacted] to Accused Products and Body group number to make/model/trim. BMW advised on December 11, 2023 that it would provide these lists to Carrum on December 13[1] and 15. Ex. 2 at 3–4. As such, Carrum's motion to compel these lists should be denied or at least deferred until after BMW's promised productions.

**4. BMW Cannot Produce Bosch's Trade Secret ACC Source Code**

Finally, Carrum requests the Court order "BMW to obtain and produce Bosch's relevant source code, as well as all other documents in Bosch's possession responsive to Carrum's document requests." Carrum's request should be denied for three independent reasons.

First, Carrum's motion to compel BMW to produce third-party documents not within its possession, custody, or control rests entirely on Carrum's assertion that the BMW Group International Terms and Conditions for the Purchase of Production Materials and Automotive Components compel Bosch to provide BMW with its trade secrets so that Carrum can review them to build its prima facie infringement case.[2] Yet, third-party ACC system source code is not within BMW's possession, custody, or control, because BMW's Terms and Conditions require only that Bosch "assist [BMW] in its investigation, defense or handling" of a patent infringement claim "by providing any documents needed by [BMW] to defend the action." Ex. 6 at 14. These Terms and Conditions do not contemplate the disclosure of source code and, as BMW previously explained

---

[1] BMW's production was delayed, and it provided this list on December 14, 2023.

[2] Carrum incorrectly and irrelevantly asserts that BMW first informed Carrum on October 17, 2023 that Bosch may have relevant documents. But Carrum itself identified Bosch as a potential source of "discoverable information relating to the development, design, and functionality of components of [ACC] systems used by BMW" in its April 18, 2023 Supplemental Disclosures. Ex. 3 at 3–4. Carrum, not BMW, has failed to investigate avenues likely to lead to evidence that Carrum may need to prove infringement.

to Carrum, cannot be read to require Bosch to provide BMW with the trade secret information necessary for Carrum to prove its prima facie infringement case. Ex. 4 at 2.

Carrum's case citations, meanwhile, do not support its position that BMW is "in control" of any Bosch documents. In *Mercy Catholic*, the agreement at issue allowed an employer to access the working papers and files of a subcontractor "at all reasonable times." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 161 (3d Cir. 2004). Nothing in BMW's Terms and Conditions provides BMW any similar ability to access Bosch files. Likewise, *Moretti v. Hertz*, involved a contract that allowed a licensor to inspect the records of a licensee "at any time during normal business hours." *Moretti v. Hertz Corp.*, No. 14-469-LPS, 2018 U.S. Dist. LEXIS 168609, *5 (D. Del. Sept. 30, 2018). Again, Carrum cites to no evidence of such blanket authorization to inspect Bosch files. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107–1108 (9th Cir. 1999) (finding no control absent legal right to obtain documents and collecting cases); *TQ Delta LLC v. Pace PLC*, No. CA 13-1835-RGA (D. Del. Sept. 28, 2015) ("[T]here is a difference between having the present ability to access the items and having control of the items."). Here, BMW lacks even "access." As such, BMW cannot be deemed "in control" of the source code for the purposes of Rule 34.

Indeed, BMW does not have access to Bosch's trade secret ACC source code for use in this proceeding under BMW's Terms and Conditions and Carrum's cited cases. BMW has repeatedly advised Carrum that it does not have possession, custody, or control of Bosch's ACC source code. *See, e.g.*, Ex. 2 at 3–4. Carrum's motion to compel BMW to produce third-party documents should be denied for this first, independent reason.

Second, Carrum presents no authority requiring a party to conduct full-scale, party-discovery searches and productions of third-party documents, including documents that comprise third-party trade secrets. Even were Carrum's arguments taken as completely accurate and applicable (they are not), no indemnification obligation[3] or requirement that a seller assist a buyer in litigation could possibly contemplate such sweeping authority over a non-party's documents. Carrum's motion to compel should be denied for this second, independent reason.

Third, Carrum raises its request for "all other documents in Bosch's possession responsive to Carrum's document requests" for the first time in its letter. The parties cannot be at an impasse regarding an issue that Carrum raises for the first time in a motion to compel, in direct opposition to Federal Rule of Civil Procedure 37's meet-and-confer requirement. Carrum's motion to compel should be denied for this third, independent reason.

Respectfully submitted,

*/s/ Christine D. Haynes*

Christine D. Haynes (#4697)

cc: Counsel of Record (via CM/ECF and e-mail)

---

[3] [redacted]